PER CURIAM.
The remaining defendants below, Bone-daddy’s of Lee Branch, LLC, d/b/a Bone-daddy’s and d/b/a Sweet Bones Alabama (“Bonedaddy’s” or “the LLC”), and John L. Cowan, Jr., appeal from a judgment of the Jefferson Circuit Court in favor of the City of Birmingham (“the City”) following a bench trial. We affirm in part and reverse in part.

Facts and Procedural History

On June 11, 2007, James A. Taylor, Jr. (“Jimmy”), filed articles of organization for Bonedaddy’s of Lee Branch, LLC, a limited liability company, which initially did business as Bonedaddy’s, a restaurant. The articles of organization listed the members of the LLC as Cowan and James A. Taylor (“Taylor”). It also stated that the LLC and its affairs would be “member managed.” The articles of organization listed Cowan as the registered agent for Bonedaddy’s and listed’ the address for Bonedaddy’s initial registered office as 1038 River Highlands Circle.
On July 16, 2008, Cowan filed an application with the City for a “tax certificate.” Section 2 of the application was headed “LEGAL NAME AND MAILING ADDRESS to which tax forms are to be sent.” (Capitalization in original.) In that section, the legal name of the business was listed as “Bonedaddy’s of Lee Branch LLC”; the address was listed as 1038 River Highlands Circle; and Cowan was listed as the contact person. In the section of the application headed “Tax Liabilities,” with instructions to check the taxes for which the business is liable, the boxes for sales tax, occupational tax, and business-license tax were checked. In the section dealing with company information, Co-wan and Taylor were listed as “partners” in the business; Cowan was listed as the corporate resident agent or local manager for the business; and Cowan’s address was shown as 1038 River Highlands Circle. The application was signed by Cowan and was dated July 16,2008.
Cowan testified that he and Taylor were originally “50-50 partners.” However, when the restaurant moved to the Summit, an upscale shopping area in Birmingham in 2008, under the name “Sweet Bones,” the Taylors had four friends invest $50,000 each into the LLC; in return, they “gave *1153 them five percent interest in it.” Cowan testified that that resulted in his having a minority interest in the LLC and the remaining members, having a majority interest.
According to Cowan, when the restaurant moved to the Summit in 2008, he opened a checking account for Bonedad-dy’s, and he was the only person who could write checks on the account at that time. Cowan admitted that, for many years, he was responsible for remitting the taxes for the LLC.
Cowan testified that in February 2010 Jimmy and Brett Taylor (“Brett”) were added to the LLC’s bank account. The defense introduced copies of several checks written on Bonedaddy’s account between November 2010 and July 2011 that listed the City as the payee and that were signed by Jimmy. Some of those checks indicated that they were for business-license or liquor taxes. Cowan’s name was printed above the signature line on each of those checks. .
Cowan further testified that, in the fall of 2010, he, Jimmy, and Yolanda Hunter, a senior auditor with the City’s department of finance, met in his office about business-license taxes that had not been paid. He testified that he was first made aware during that meeting that the business-license taxes needed to be paid. Cowan testified that he and Jimmy wanted to pay those taxes; that they talked to Hunter about setting up a plan to take care of the taxes; and that they were working in good faith toward paying those taxes.
Cowan testified that he was fired as the “general manager and operating partner of the restaurant” in February 2011, but he remained a member of the LLC. The defense presented evidence indicating that on February 24, 2011, Cowan was removed as a signatory from Bonedaddy’s checking account. Cowan further testified that, after February 2011, he did not have any “say so” in the day-to-day operations of the restaurant; that he did not pay the bills for the restaurant; that he did not do the payroll; that he did not write the checks; and that he no longer had any signing privileges on the checking account.
Cowan also testified that, at some point, he received at his residence a notice that the business-license taxes were due and a notice that a check in partial payment of those taxes had been returned'for insufficient funds. Subsequently, he sent a letter to the City’s finance department by certified mail on April 5, 2011. The letter stated:
“This letter is to advise you I am no longer employed as a manager or director by Bonedaddy’s of Lee Branch LLC..:. I am returning their mail to you with this notice so that you may direct it to the current management.
“For your records the managing partner for this LLC is Jimmy Taylor Jr. The business address for Bonedaddy’s of Lee Branch LLC is
“Dba Sweet Bones Alabama
“245 Summit Blvd.
“Birmingham, AL 35243.
“Please adjust your records accordingly to reflect this change that went into effect early last month.”
Cowan testified that, after he sent that letter to the City, he'did not receive any further communication from the City regarding those taxes.
The defense also introduced a printout dated April 19, 2011, from the City’s revenue division that showed delinquencies for Bonedaddy’s. Handwritten on that print, out was a fax. number, the name “Jimmy Taylor,” and the word “audit.”
The defense'presented, evidence indicating that, on June 29, 2011, Hunter, on *1154 behalf of the City’s revenue division, sent an audit letter addressed to Bonedaddy’s at the Summit Boulevard address of Sweet Bones. The salutation on the letter was “Dear Mr, Jimmy Taylor.”
On October 24, 2011, Cowan filed a “Registered Agent Resignation Notice” in the secretary of state’s office. In the notice, Cowan certified that, on October 10, 2011, he had given Bonedaddy’s a written notice of his resignation as. its registered agent. Cowan testified that he had previously sent a resignation notice to the secretary of -state’s office; that he checked with the secretary of state’s office;; that the secretary of state’s office indicated that it had not received the notice; and that he refiled the notice at that time.
On January 6, 2012, a “Resolution of the Members of Bonedaddy’s of Lee Branch, LLC” was adopted. The resolution stated:
“The undersigned members of Bone-daddy’s of Lee Branch, LLC, constituting over one-half of the number of members of the company, and pursuant.to Section 10A-5-4.01, Ala. Code, have met, voted and resolved to remove James A. Taylor, Jr., James A. Taylor and Brett Taylor from any management or employment position with- the company and to remove them from any. authority to act on its behalf in the business affairs of the company in any fashion, and hereby revoke any such prior grants of authority for the company with any banks or other entities, with this removal to be effective immediately.”
The resolution was signed by Cowan; Dr. Ronald W. Orso; Carrie Cearlock, as the executrix of the estate of Sperry Snow; Glen Guthrie, as the representative of “Barkley' Enterprises”; and Scott Sink. Cowan testified that, when the other members of Bonedaddy’s discovered that Jimmy and Brett were using the company’s bank accounts and funds for their personal use, those members came to him, said they wanted to stop Jimmy’s and Brett’s use of the accounts and funds, and asked him if he would join them. Cowan stated that, from the time his employment was terminated until the time the other members of the LLC decided to take action, he did not have any involvement in the LLC. However, he admitted , that, even at the time of the trial, he remained a member of the LLC. Cowan also testified that the articles of organization for Bonedaddy’s had not been amended to add the other members who. were participating in the LLC at the time the January 2012. resolution was adopted.
' On February .9, 2012, the City issued a notice of final assessment to “Bonedaddy’s of Lee Branch LLC” for- $32,253.54 in business-license taxes, interest, penalties, and fees for the period 2008 through December 2012; a notice of final assessment to “Bonedaddy’s of Lee Branch d/b/a Bo-nedaddy’s and ■ d/b/a Sweetbones of- Alabama” for $4,931.72 in occupational- taxes, interest, and penalties for. the period July 1,2011, through December 31, 2011; and a notice of final assessment to “Bonedaddy’s of Lee Branch d/b/a Bonedaddy’s and d/b/a Sweetbones of Alabama” for $169,241.55 in sales taxes, interest, and penalties for the period August 1, 2009, through December 31, 2'011. The address listed on each of the notices.was “245 Summit Blvd.” However, the notices were sent, by. certified mail, to The Evans Law Firm, P.C., at an address on Oxmoor Road. Neither Bone-daddy’s nor Cowan paid any of the three final assessments.
On March 20, 2013, the City filed in the Jefferson Circuit Court a “Complaint and Motion for Preliminary Injunction” against Bonedaddy’s, Cowan, Taylor, Orso, the estate of Sperry Snow, Guthrie, and Sink (hereinafter collectively referred to as “the defendants”). In the complaint, the City *1155 alleged that the defendants had failed and refused to submit business records and tax returns for the periods that were the subject of the complaint; that the defendants were currently engaged in business in the City of Birmingham in violation of the City’s business-license code; and that notice of the final tax assessments had been mailed but that no payments had been forthcoming. The City asked the trial court to enter a preliminary injunction directing the defendants to refrain from further conducting business within the City and causing the sheriff to padlock the defendants’ place of business in the City. It also requested that the trial court render a judgment in favor of .the City and against the defendants for . the amount of taxes past due and owing and the amount of taxes through the present date, together with penalties and interest. Finally, it requested that, upon final hearing, the trial court enter a permanent injunction restraining the defendants from engaging in business within the City’s corporate limits until all the delinquent and unpaid taxes, penalties, and interest were paid.
After a suggestion .of bankruptcy was filed regarding Taylor, the trial court entered an order staying all claims asserted against Taylor. Also, based on a stipulation of dismissal filed by the parties, the trial court entered an order dismissing Orso, Guthrie, Sink, and Cearlock, as the executrix of the estate of Sperry Snow, without prejudice.
On August 9, 2013, the trial court entered an order stating:
“The above referenced matter came on for hearing on the Plaintiffs Complaint and Motion seeking the issuance of a Preliminary Injunction herein. The Parties appeared by and through their respective Counsel and announced to the Court that the subject business has been closed for more than a year and that the principal party herein namely, JAMES A. TAYLOR, SR., has filed a Petition in the United States Bankruptcy Court in the State of Oklahoma. The portion of the Complaint filed by the Plaintiff herein seeking injunctive relief is therefore hereby declared to be MOOT.”
Bonedaddy’s and Cowan filed a. motion for a partial summary judgment as to the City’s “claim against them for Sales Taxes due for the year 2011-12.” After the City filed its response, the trial court denied the motion.
On June 23, 2014, the trial court conducted a bench trial. On July 7, 2014, the trial court entered its “Order Granting Permanent Injunction and Final Judgment,” .finding, in pertinent part:
“(3) That pursuant to the authority granted by its members, John L. Cowan, Jr, submitted to the Plaintiff herein an Application For Tax Certificate on or about July 16, 2008, for the purposes of registering and receiving a license to operate a new business known as Bone-daddy’s and agreeing therein to be in full ‘compliance with all applica- ' ble .City of Birmingham Tax Code provisions, and state laws.’
“(4) That the Application for Tax Certificate was signed by John L. Cowan, Jr., and in Section 10 thereof, identified sales tax, occupational tax and business license tax as being those taxes for which the Company would be liable.
“(5) That the Plaintiff issued its business license to the Defendant.
“(6) That the Defendant, commenced op•erations as Bonedaddy’s Restaurant . and operated for a number of years during which business license taxes, sales taxes and occupational taxes became due and were paid sporadically., According to this Court’s *1156 findings the total amount of the taxes due to the Plaintiff at the conclusion of the testimony in this case is as follows:
• Business license taxes: $ 32,253,54
“• Occupational taxes: 4,931.72
“? Sales taxes: 169,241,55
“• Total $203,426.81
“(7) That the Plaintiff entered its Final Assessments for each of the taxes due as set forth in paragraph 6 above on or about February 9, 2012, serving copies of each of the Final Assessments as instructed to the then law firm representing the Defendant herein on February 10, 2012. No Appeal of the Final Assessment has been made to the date óf the trial of this cause to any Administrative or Judicial body.
“(8) That, though the defendant, John L. Cowan, Jr., by letter dated April 1, 2011, notified the Plaintiff that he was no longer employed as a manager or director by Bonedaddy’s of Lee Branch, LLC the said John L. Cowan, Jr., continued to exercise his rights as a member/manager of the Company as was evidenced by a Resolution signed by John L. Co-wan, Jr., and other members on or about January 6, 2012. Further, the Court finds that, though provisions exist for the cessation of membership by one or more members of the Company, John L. Co-wan, Jr., remained as a member/manager of the Company through the conclusion of the trial ■ of this matter.
“(9) That this Court is without subject-matter jurisdiction to hear the substantive challenges made by the Defendants to the Final Assessments issued on February 9, 2012, because the evidence submitted to this Court established that the Defendants did not appeal said Final Assessments within the thirty (30) day statutory time limit. Furthermore, it was undisputed that the Defendants failed to pay the amounts shown on the Final Assessments or execute a supersedeas bond, as required by statute and ordinance, to invoke this Court’s jurisdiction to hear an appeal from the Final Assessments.”
(Emphasis in original.) The trial court entered a judgment against Bonedaddy’s and Cowan, jointly and severally, in the amount of $203,426.81. It also permanently enjoined Bonedaddy’s and Cowan from operating a business within the City’s corporate limits until Bonedaddy’s and Cowan had satisfied all the tax liabilities enumerated in the order. This appeal followed.

Standard of Review

“ ‘Because the trial court heard ore tenus evidence during the bench trial, the ore tenus standard of review applies.’ Kennedy v. Boles Invs., Inc., 53 So.3d 60, 67 (Ala.2010).
“ ““ “[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.” ’ ” Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). “ ‘The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.’” Wattman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quot- *1157 mg Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). “Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.” Wattman v. Rowell, 913 So.2d at 1086.’
“Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007). ‘Questions of law are reviewed de novo.’ Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala.2004).”
Moultrie v. Wall, 172 So.3d 828, 839 (Ala.2015).

Discussion

I.
Cowan and Bonedaddy’s argue that the trial court did not have subject-matter jurisdiction to enter a final judgment against Cowan in this case because, they say, the City did not comply with certain provisions of the Alabama Taxpayers’ Bill of Rights and Uniform Revenue Procedures Act, § 40-2A-1 et seq., Ala.Code 1975 (“the TBOR”). Specifically, they contend that the City did not comply with § 40-2A-7, Ala.Code 1975, because Cowan did not receive copies of the preliminary and the final assessments; because the preliminary and final assessments did not include Co-wan’s name; and because “[t]he only purported notice offered by the City was a letter to the LLC of the preliminary and final tax assessments delivered to a secretary at a law firm that represented the LLC in another matter.” Cowan and Bo-nedaddy’s brief, p. 15.
“The TBOR prescribes'uniform procedures that must be followed in assessing and collecting taxes. § 40-2A-1 and - 2[, Ala.Code 1975]. Pursuant to the TBOR, the State Department of Revenue (‘the Department’) is required to provide a taxpayer, with notice of any planned audit of the taxpayer’s books and records; with a statement' of the taxpayer’s procedural rights, including the right to an administrative review of a preliminary assessment; and with a written description of the grounds for any claimed underpayment or nonpayment of a tax. § 40-2A-4[, Ala.Code 1975]. A taxpayer has the right to the entry of a preliminary assessment stating the specific amount of taxes the Department claims the taxpayer owes, which must be either mailed or personally delivered to the taxpayer. § 40-2A-7[, Ala.Code 1975]. The taxpayer is then entitled to dispute the preliminary assessment by filing a petition for review with the Department. If the parties are unable to resolve their differences and the Department .determines that the assessment is valid, it must .enter a final assessment. The taxpayer may then appeal the assessment to the administrative law division of the Department (or to a similar administrative agency in the event the dispute involves local taxes levied by a municipality or county not administered by the Department) or to the circuit court in the county where- the taxpayer resides. § 40-2A-7.”
General Motors Acceptance Corp. v. City of Red Bay, 894 So.2d 650, 653 (Ala.2004).
Section 40-2A-7(b), Ala.Code 1975, provides, in pertinent part:
“(3) ... The preliminary assessment entered by - the department, or a copy thereof, shall be promptly mailed by the department to the taxpayer’s last known address by either first class U.S. mail or certified mail with return receipt requested, but at the option of the department, the preliminary assessment may be delivered to the taxpayer by personal service.
*1158 “(4) Procedure for review of disputed preliminary assessments; entry and notice of final assessment,
[[Image here]]
“d. The final assessment' entered by the department, or a copy thereof, shall be mailed by the -department to the taxpayer’s last known address (i) by either first class U.S. mail or certi•fied mail with return receipt request•<ed in the case of assessments of tax of five hundred dollars ($500) or less or (ii) by certified mail with return receipt requested in the case of-assessments of tax of more' than five hundred dollars ($500), In either case and at the option of the department, the final assessment, or a copy thereof, may be delivered to the taxpayer by personal service.”
In the reply brief, Cowan and Bonedad-dy’s argue that the issue of notice was raised at trial. There was some evidence presented regarding the service of the notices of final assessments and when Cowan actually received such notices. However, Cowan and Bonedaddy’s raise their argument that the City did not comply with the procedures provided for in the TBOR for the first time on appeal. Bonedaddy’s and Cowan also argue, based on this Court’s decision in City of Red Bay, that this issue implicates the subject-matter jurisdiction of the trial court to enter a judgment in this case and therefore can bb raised for the first time on appeal.
In City of Red Bay, Red Bay and Franklin County filed a-.classiaction lawsuit against-GMAC Leasing Corporation and. GMAC Financial Corporation (hereinafter : collectively referred to as “GMAC”) in which they - asserted that GMAC had failed to collect local sales or rental taxes on its leases and had failed to remit such taxes to the local taxing jurisdictions. In that case, this Court noted:
“GMAC argues that the City and the •County are subject to the TBOR. Therefore, it argues,-before the City and the County can seek to collect the sales and rental taxes they claim GMAC. owes them, they must first comply with the TBOR by providing, a written statement to GMAC of its procedural rights, including the right to administrative review of a preliminary assessment; by providing a written -description of the basis for .their claim to the taxes owed; and by issuing a preliminary and a final assessment. It is undisputed that the City and the County have not taken any action required by the TBOR.
“The City and the County argue that the TBOR does not apply to local taxing jurisdictions. We disagree.”
894 So.2d at 653. This. Court went on to hold that'“the. Local Tax Simplification Act of 1998, Act No. 98-192, Ala. Acts 1988 (‘the LTSA’), made the TBOR equally applicable to tax assessments and tax-collection procedures by local taxing authorities such as the City and the County,” 894 So.2d at 653. This Court then addressed the follpwing argument:
“The City and the County also argue that compliance with the TBOR is not jurisdictional -and that they were not required to exhaust the administrative remedies of the TBOR- because of the exception to the exhaustion-of-remedies-doctrine that applies when questions of law and statutory construction predominate over questions of fact. Again we disagree,
“This Court addressed the TBOR in Patterson v. Gladwin Corp., 835 So.2d 137 (Ala.2002). In Patterson, a corporate taxpayer, brought a class action against the Department seeking refunds of corporate franchise taxes. The taxpayer attempted to rely on exceptions to the exhaustion-of-remedies doctrine as *1159 authority for bypassing the requirements of the TBOR. Although the Court noted that Alabama recognizes the doctrine of exhaustion of administrative remedies and that that doctrine ‘ “is; a judicially imposed prudential limitation, not an issue of subject-matter jurisdiction,” ’ 835 So.2d at 142, the Court did not accept the taxpayer’s argument that it need not exhaust administrative remedies when seeking a refund of taxes from the Department. The Court held that complianeé with the TBOR is the exclusive means for obtaining a franchise-tax refund, and explicitly stated that ‘[t]he TBOR is jurisdictional on its face. See § 40-2A-7(c)(5)c; § 40-2A-9(g)(1)[, Ala.Code 1975].’ 835 So.2d at 153. See also State v. Amerada Hess Corp., 788 So.2d 179 (Ala.Civ.App.2000), in which the Court of Civil Appeals dismissed an action by the Department to recover severance taxes on the basis that the trial court lacked jurisdiction over the action because the Department had failed to follow the TBOR.
“Because the failure of the City and the County to comply with the provisions of the TBOR before filing their complaint deprived the trial court of jurisdiction, we vacate the class-certification order and remand the cause for the trial court to enter an order of dismissal. Because we conclude that the class-certification order must be vacated, we need not address the other issues raised by GMAC.”
894 So.2d at 655-56 (some emphasis added).
The City of Red Bay Court, in concluding that the circuit court lacked jurisdiction because of a failure to follow the TBOR, cited with approval the decision of the Court of Civil Appeals in State v. Amerada Hess Corp., 788 So.2d 179 (Ala.Civ.App.2000). In Amerada Hess Corp., the State of Alabama and the State Department of Revenue (hereinafter collectively referred to as “the Department”) filed a complaint in the Mobile.Circuit Court alleging that Amerada Hess Corporation and 35. other oil producers (hereinafter collectively referred to as “the producers”) had engaged in deceptive schemes and practices, for the purposes of underpaying severance taxes. The Department sought to recover past-due taxes, interest, and penalties and also sought declaratory and injunctive relief. The Court of Civil Appeals noted that “the complaint included no tax assessment advising the producers of the amount of their tax liability.” 788 So.2d at 180. The producers filed motions to dismiss the complaint, which the trial court granted. The Department appealed, arguing that § 40-2-11, Ala.Code 1975, “empower[ed] it to sue a taxpayer for the collection of taxés or' penalties due the state.” 788 So.2d at 181. Although the producers did not dispute the Departments authority to sue for the collection of taxes, they argued that, 'when the Department sues a taxpayer to recover taxes, penalties, and interest, it must proceed in conformity with the TBOR. The Court of Civil Appeals stated: “[T]his appeal turns on the question whether the procedures set forth [in the TBOR] are minimum procedures the Department is bound to follow.” 788 So.2d at 181. After a lengthy discussion of the language in various provisions of the TBOR, of cases from this Court emphasizing the need for taxing authorities to provide notice of assessments to taxpayers, of requirements in the original’severance-tax-levy statute, and of language in the Alabama Tax Enforcement and Compliance Act, § 40-29-1 et seq., Ala.Code 1975, the Court of Civil Appeals concluded that the “legislature intended § 40-2-11 to empower the Department to institute legal action against a taxpayer for tax liability once an assessment has been *1160 made. Any other interpretation of this statute would render the Taxpayers’ Bill of Rights powerless.” 788 So.2d at 184. Ultimately, the Court of Civil Appeals concluded “that the trial court properly dismissed the Department’s claims for money damages and for a declaratory judgment, based on its lack of subject-matter jurisdiction resulting from the Department’s failure to follow the procedures mandated by the Taxpayers’ Bill of Rights.” 788 So.2d at 185 (emphasis added).
Three years after deciding City of Red Bay, this Court took up another municipal-taxation dispute in Russell Petroleum, Inc. v. City of Wetumpka, 976 So.2d 428 (Ala.2007). Russell Petroleum involved a circuit court action filed by the City of Wetumpka (“Wetumpka”) against Russell Petroleum, Inc. (“Russell Petroleum”), to recover unpaid sales taxes, unpaid business-license fees, and unpaid gasoline taxes that Russell Petroleum did not remit to Wetumpka on retail sales of gasoline by the business. Russell Petroleum argued that it was not required to purchase a business license from Wetumpka or to remit any gasoline or sales taxes because, it argued, the annexation into Wetumpka of the property on which its convenience store and gasoline station were located was invalid. Alternatively, Russell Petroleum argued that the trial court lacked jurisdiction to order Russell Petroleum to pay municipal sales taxes because Wet-umpka had failed to follow the procedures of the TBOR. The trial court rejected all of Russell Petroleum’s defenses and issued a final order requiring Russell Petroleum to pay all the taxes.
This Court agreed with the trial court that Wetumpka had followed the procedures necessary to annex the property on which Russell Petroleum’s convenience store and gasoline station were located and that, therefore, Russell Petroleum was liable for payment of the business-license fees and the municipal gasoline taxes. The Court concluded, however, that Wet-umpka’s failure to follow the procedures of the TBOR rendered invalid its enforcement action to recover the unpaid sales taxes. As the Court explained:
“The City of Red Bay decision is controlling authority. As in that case, the circuit court here did not have subject-matter jurisdiction to adjudicate the sales-tax issue because the City litigated that dispute without availing itself of the administrative procedures in the TBOR, which the LTSA [Local Tax Simplification Act of 1998] made applicable to the assessment of local sales, use, rental, and lodgings taxes.7 ...
" 7 Our holding here is limited to municipal sales taxes'. Although the City did not follow the required administrative procedures before it sued to collect the unpaid business-license fees and gasoline taxes, the trial court had jurisdiction to adjudicate the disputes related to the levy of those taxes.... ”
976 So.2d at 438 (emphasis other than on “sales” added).[1]
In this case, the City had issued a final sales-tax assessment against Bone-daddy’s. The notice of final assessment, however, did not name Cowan individually as the taxpayer nor was the notice mailed to Cowan. Additionally, the City did not present any evidence at trial to indicate that it had ever issued a final sales-tax *1161 assessment against Cowan per se.[2] Based on the evidence presented at trial, it does not appear that the City complied with the requirements of the TBOR with regard to Cowan. The evidence presented at trial suggests that, rather than following the administrative procedure set forth in the TBOR, the City’s initial attempt to collect the sales taxes from Cowan was in the circuit court.[3] Consistent with this Court’s decision in Russell Petroleum, we hold that the City’s failure to comply with provisions of the TBOR before it filed its complaint seeking to collect the sales taxes from Cowan deprived the trial court of jurisdiction over, the City’s claim for sales taxes against Cowan.[4]
It is also true that the City did not follow the required administrative procedure before suing Cowan for the business-license taxes and occupational taxes. Again, keeping with, the above-described holding of this Court in Russell Petroleum, however, we hold that the City’s failure to comply with the TBOR did not deprive the trial court of subject-matter jurisdiction to adjudicate the .dispute regarding those taxes.
II.
Cowan and Bonedaddy’s also argue that the trial court erred in awarding a judgment against Cowan personally based upon Bonedaddy’s application for a business-tax certificate because he had not collected the taxes claimed; because he did not have access to LLC’s bank account; and because he cannot be held personally responsible for the actions of the LLC. More specifically, insofar as the latter argument relates to the issue of liability for the City’s business-license tax and occupational tax, Cowan and Bonedaddy’s correctly observe:
“Membership/ownership in an LLC ... is not a basis for liability for debts of the LLC. In fact, the limitation of such liability is one of the foundations of the Limited Liability statutes. As a member and manager of the LLC, Mr. Cowan cannot be held personally responsible for actions of the LLC. Alabama law has consistently held that LLC membérs are limited in their liability: % general, members of an LLC are not proper parties to proceedings *1162 against the LLC, Ala.Code § 10-12-18, and members are not liable for judgments against the LLC, Ala.Code § 10-12-20.’ Filo Am., Inc. v. Olhoss Trading Co., L.L.C., 321 F.Supp.2d 1266, 1268 (M.D.Ala.2004).
“In 2009, Ala.Code § 10-12-18 was recodified without change to Ala.Code § 10A-5-2.07 and it states:
“‘§ 10A-5-2.07. Parties to actions. Neither a member nor a manager of a. limited liability company is a proper party to proceedings by or against a limited liability company, except where the object is to enforce a member’s or manager’s rights against or liability to the limited liability company,’ ” '
See also, e.g., J. William Callison and Maureen A. Sullivan, Limited Liability Companies: A State-by-Siate Guide To Law And Practice § 5:1 (2014) (noting that “[o]ne of the hallmark features of limited liability companies is the members’ protection from personal liability for the LLC’s debts, obligations, and liabilities”).
In response, the City invokes the administrative-law decision of the Alabama Department of Revenue in Nonna Rose Kingsley, LLC v. Alabama Department of Revenue (No. W. 09-1194, April 15, 2010) In Kingsley, the Department stated:
“[Reading §§ 10-12-8(b)[, Ala.Code 1975,] and 10-12-20(a)[, Ala.Code 1975,] together, member^ of LLCs that are taxed as partnerships are still LLC members, - and thus,- pursuant to § 10-12-20(a), are not personally liable for the tax obligations and other debts of the LLC, That holding is consistent with how the IRS taxes such.- members for federal withholding an'd other employment taxes,”
Id. at 5 (citing with approval Capitol Mach. & Equip Co. v. State of Alabama, (No. S. 08-619, April 20, 2009), at 8-13). More specifically, the City responds to Co-wan and Bonedaddy’s argument by attempting to rely on the following exception to the rule of nonliability invoked by Co-wan and acknowledged by the City itself:
“An LLC member may be personally liable for the trust fund taxes of the LLC, but only if the member is a responsible person under Alabama’s 100 percent penalty statutes, Code of Ala. 1975, § 40-29-72 and 40-29-73.”
Kingsley, supra.
The problem with the City’s argument is that neither the business-license tax nor the occupational tax in question is one of the taxes covered by Alabama’s 100 percent penalty statutes, §§ 40-29-72 and - 73, Ala.Code 1975.[5] Section 40-29-73(a) provides as follows:
“Any person required to collect, truthfully account for, and/or pay over any tax imposed by Sections 40-17-2 [motor-fuel tax], 40-17-220 [excise tax on lubricating oil], 40-18-71 [withholding tax], 40-21-82 [sales tax ón utilities], 40-23-2 [sales tax], 40-28-61 [property tax], 40-26-1 [hotel tax] and any other local sales, use, and gross receipts taxes *1163 collected by the state Department of Revenue who willfully fails to collect such tax, or truthfully account for, and/or pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in , addition to other penalties provided by law, be liable for a penalty up to the total amount of the tax evaded, or not collected, or not accounted for and paid over.”
(Emphasis added.) None of the taxes referenced in this section are the business-license tax or the occupational tax at issue here. The only tax listed in the statute that even resembles either the business-license tax or the occupational tax is the tax imposed by § 40-18-71, Ala.Code 1975, but that provision addresses.only withholding moneys owed in respect of Alabama state income taxes levied pursuant to Chapter 18 of Title 40. The,trial court therefore erred in holding Cowan personally responsible for the business-license taxes and the occupational taxes owed by Bonedaddy’s.
III.
Finally, Bonedaddy’s and Cowan argue that the trial court did not have subject-matter jurisdiction to enter a final order in this case because Bonedaddy’s was not properly served with notice of the preliminary or the final tax assessments, as required by § 40-2A-7, Ala.Code 1975.
As to the preliminary assessments, in their original brief, Bonedaddy’s and Co-wan assert that “[t]he only purported notice offered by the City was a letter to the LLC of the preliminary' and final tax assessments delivered to a secretary at a law firm that represented the LLC in another matter.” Cowan and Bonedaddy’s brief, p. 15. None of the parties presented any evidence at trial, however, regarding the issuance of the preliminary, assessments or the address to which any such preliminary assessments had been mailed. Therefore, there is no evidence'before this Court to indicate that Bonedaddy!s was not- properly served with notice of the preliminary assessments. ' *
With regard to the notices of the final assessments, the evidence indicated that the . City had mailed the notices of the final assessments by certified mail and that the nonces had been mailed to The Evans Law Firm. Sabrina Franklin, a senior auditor with the City, testified:
“We send it certified to the address that we — I was told to -send it to after communicating with the attorney that had spoke with me by phone and through Email. She told me to issue the final assessment to the following address that has been listed on this green card.”
Franklin testified that the City received the return receipt indicating that the certified mail had been accepted. Cowan and Bonedaddy’s did not present any evidence to dispute Franklin’s testimony that she had been instructed to send the final assessments to The Evans Law Firm.
In Davidson v. State of Alabama Department of Revenue (No. P. 2003-232, August 5, 2003), the Department of Revenue’s administrative-law division addressed the issue whether a final assessment had been correctly mailed to a taxpayer’s last known address. In addressing this issue, the administrative-law judge stated:
“The issue of whether a final assessment was correctly mailed by the Department to a taxpayer’s last known address was discussed in Island Interiors, Inc. v. State of Alabama, S. 01-317 (Admin. Law Div. Preliminary Order Dismissing Department’s Motion to Dismiss 8/23/01), as follows:
“ ‘The Department'is required to mail a final assessment over $500 by certified mail to the taxpayer’s last known *1164 address. Section 40-2A-7(b)(4)c. The requirement that a final assessment must be mailed to a taxpayer’s last known address is modeled after the federal requirement that a notice of deficiency must be mailed to a taxpayer’s last known address. 26 U.S.C. § 6212(b)(1). Consequently, federal authority should be followed in determining if the Department properly mailed a final assessment to a taxpayer’s last known address. Best v. State Dept. of Revenue, 417 So.2d 197 (Ala.Civ.App.1981) (when an Alabama statute is modeled after a federal statute, federal authority should be followed in interpreting the Alabama statute).
‘“If a final assessment is timely mailed to a taxpayer’s last known address, actual receipt by the taxpayer is not required. Consequently, a taxpayer cannot refuse to claim a final assessment served by certified mail, and thereby avoid the 30 day appeal deadline. Williams v. State, Dept. of Revenue, 578 So.2d 1345 (Ala.Civ.App.1991); see also, Robert A. Beach v. State of Alabama, Inc. 00-615 (Admin. Law Div. ODA 11/28/00). For federal cases on point, see, Erhard v. C.I.R., 87 F.3d 273 (1996); Patm[o]n and Young Professional Corp. v. C.I.R., 55 F.3d 216 (1995).
“ ‘The Department must, however, exercise reasonable diligence in determining a taxpayer’s last known address. In deciding if the Department has used reasonable diligence, the focus is not on whether the taxpayer notified the Department of a new or different address, but rather, on the most current information which the Department possesses. U.S. v. Bell, 183 B.R. 650 (S.D.Fl.1995).’
“Island Interiors, S. 01-316 at 4-5.
[[Image here]]
“A mailing ‘is sufficient if it is mailed to the address where the Commissioner reasonably believes the taxpayer wished to be reached.’ Green v. United States, 437 F.Supp. 334, 337 (1977). As stated above, the focus is ‘on the most current information which the Department possesses.’ U.S. v. Bell, 183 B.R. 650 (S.D.Fla.1995). ‘The controlling test ... is whether, in light of all the pertinent circumstances, the IRS acted reasonably in mailing the deficiency notice’ to the address in question. Crum v. C.I.R., 635 F.2d 895, 899 (1980).”
Davidson, at 2-3 (emphasis added).
In this case, the City presented undisputed evidence that Franklin had been instructed to send the final assessments to The Evans Law Firm. Therefore, the evidence presented at trial indicated that the City mailed the notices of final assessments to the address where Bonedaddy’s wished to be reached and that the City acted reasonably in mailing the notices of final assessments to The Evans Law Firm.
Cowan and Bonedaddy’s also argue that, without notice, Bonedaddy’s was deprived of its right to appeal and its opportunity to exhaust administrative remedies. However, Bonedaddy’s did not present any evidence that it did not, in fact, receive the notices of the final tax assessments or that it did not receive the notices in time to file an appeal. Finally, even after the City had filed its complaint in this case, Bone-daddy’s did not attempt to file an appeal from the final tax assessments. For these reasons, Bonedaddy’s has not established that it is entitled to relief as to this claim. Accordingly, we affirm the trial court’s judgment regarding Bonedaddy’s liability for the taxes owed.

Conclusion

Based on the foregoing, we affirm the trial court’s judgment with regard to the *1165 sales-tax, the business-license-tax, and the occupational-tax assessments against Bo-nedaddy’s. We reverse the trial court’s judgment with respect to Cowan’s responsibility to pay Bonedaddy’s outstanding sales taxes because the City’s failure to comply with the provisions of the TBOR before filing its complaint seeking to collect sales taxes from Cowan deprived the trial court of jurisdiction over that claim. We also reverse the trial court’s judgment with respect to Cowan’s responsibility to pay the outstanding business-license taxes and occupational taxes because those are not taxes for which a member of an LLC can be held personally liable under the 100 percent penalty provisions of §§ 40-29-72 and -73. We remand this ease with instructions for the trial court to vacate its judgment against Cowan regarding the payment of the assessments for sales, occupational, and business-license taxes.[6]
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
MOORE, C.J., and STUART, BOLIN, PARKER, MURDOCK, SHAW, MAIN, WISE, and BRYAN, JJ., concur.

. See also § 11-51-210, Ala.Code 1975, as amended by the Local Tax Simplification Act of 1998, Act, No. 98-192, Ala. Acts 1998, referencing "taxes levied or assessed by any municipality pursuant to the provisions of Section 11-51-200, [Ala.Code 1975],” a statute concerned only with sales taxes.

.The City attached to its complaint the following resolution by the Birmingham City Council adopted on June 6, 2012:
“Be it resolved by the Council of the City of Birmingham that the Sales Tax Assessment as levied against Bonedaddy’s of Lee Branch LLC & John L. Cowan, the person responsible for the collection and remittance of tax, doing business as (DBA) SWEET BONES OF ALABAMA, by the Finance Department, dated 5/24/12 for the period of 10/08-02/12, in the amount of $152,892.10 for Sales Tax, is deemed correct and is made final.”
This resolution was not introduced at trial. Additionally, the resolution references an assessment dated May.24, 2012. However, the City did not present any, evidence at trial regarding a sales-tax assessment dated May 24, 2012. Rather, the only notices of final assessments that were introduced at trial were dated February 9, 2012. Finally, the amount of the sales tax in the February 9, 2012, assessment that was introduced at trial was for an amount greater than the assessment of May 24, 2012, that was referenced in the resolution.

. At trial, the City introduced a March 21, 2013, letter written by Daniel Evans of The Evans Law Firm that referenced a March 7, 2013, letter from the City regarding a notice of a municipal tax lien that designated Cowan and Taylor as " ‘the person[s] responsible for collection and remittance of taxes.’ " However, no municipal tax lien was introduced into evidence at .trial. Additionally, the City did not present any evidence regarding the actual filing of any such lien.

. Neither party challenges the applicability of Russell Petroleum to this case.

. Among other .things, Cowan replies to the City's argument that he should be deemed liable under §§ 40-29-72 and -73 by stating that '‘[b]usiness license and occupational taxes are not trust fund taxes and thus fall outside of the scope of Alabama's 100 percent penalty statute,” Cowan is correct that a business-license tax is not a trust-fund tax; it is imposed directly upon Bonedaddy’s and is an obligation for which Bonedaddy’s is solely acbountable to the City, And although an “occupational tax” would appear to generally fit the definition of a trust-fund tax' as a tax collected by an entity and held in trust on behalf of the taxpayer for the benefit of the taxing authority, see, e.g., In re Markos Gurnee P’ship, 163 B.R. 124; 130 (Bankr.N.D.Ill. 1993), it clearly is a tax that falls outside the scope of Alabama’s 100 percent penalty statutes. See discussion, infra,

. Based on our disposition in this case, we pretermit any other arguments raised by the parties.