IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

————————

**STATE OF ARIZONA, EX REL., ARIZONA DEPARTMENT OF REVENUE,**
*Plaintiff/Appellee,*

*v.*

**PETER A. TUNKEY, ET AL.,**
*Defendants/Appellants.*

————————

No. CV-22-0128-PR
**Filed February 23, 2023**

————————

Appeal from the Arizona Tax Court
The Honorable Danielle J. Viola, Judge
No. TX2019-000451

**AFFIRMED**

————————

Memorandum Decision of the Court of Appeals,
Division One
No. 1 CA-TX 21-0006
Filed April 19, 2022

**AFFIRMED**

————————

COUNSEL:

Kristin K. Mayes, Arizona Attorney General, Penny Taylor Moore (argued), Assistant Attorney General, Phoenix, Attorneys for Arizona Department of Revenue

Paul J. Valentine (argued), Jared W. Miller, Quarles & Brady LLP, Phoenix, Attorneys for Peter A. Tunkey, et al.

————————

VICE CHIEF JUSTICE TIMMER authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL and JUSTICES BOLICK, LOPEZ, BEENE, MONTGOMERY, and KING joined. JUSTICE BOLICK, joined by JUSTICES BEENE, MONTGOMERY, and KING authored a concurring opinion.

_____

VICE CHIEF JUSTICE TIMMER, Opinion of the Court:

**¶1**         This case follows in the wake of *Arizona Department of Revenue v. Action Marine, Inc.*, 218 Ariz. 141, 146–47 ¶¶ 28–29 (2008), which interpreted A.R.S. § 42-5028 as imposing liability on responsible persons who fail to remit to the Arizona Department of Revenue ("ADOR") money collected from a taxpayer-business's customers to cover transaction privilege taxes.   The issue here is whether ADOR must assess this amount against the responsible person pursuant to A.R.S. § 42-1104(A) before filing a collection lawsuit.   We conclude it does not.

## BACKGROUND

**¶2**         The transaction privilege tax ("TPT") "is an excise tax on the privilege or right to engage in an occupation or business."   *Action Marine*, 218 Ariz. at 142 ¶ 6 (quoting *Ariz. Dep't of Revenue v. Mountain States Tel. & Tel. Co.*, 113 Ariz. 467, 468 (1976)).   It is not a sales tax but instead a tax on a business's gross receipts.   *Id.*   Although liability for the TPT falls on the business, it may charge customers a separately itemized amount to cover the tax.   *See id.* ¶ 7; *see also* A.R.S. §§ 42-5002(A)(1), -5024.   The business must remit to ADOR all money collected from customers for TPT, even if that amount exceeds what is owed.   *Action Marine*, 218 Ariz. at 142 ¶ 7; § 42-5002(A)(1).

**¶3**         Matthew Kievit and Peter Tunkey formed KT McClintock, LLC ("KT") in 2005 and served as managing members.   KT did business as Silver Mine Subs, a franchised sandwich shop.   As relevant here, KT collected money from customers to cover its TPT obligation during various months in 2010 and 2012.   The parties do not dispute that KT filed TPT returns for the relevant periods and self-assessed the amounts owed; ADOR

accepted those filings without disputing the amounts owed; and KT failed to remit about $26,000 of those amounts to ADOR.

¶4          Through Tunkey, KT negotiated payment arrangements with ADOR and paid the TPT owed for 2010 and 2012, except for the $26,000 at issue.   Tunkey moved to Georgia in 2013 and stopped serving as a managing member for KT in 2015.   ADOR never assessed taxes against Tunkey personally or notified him that he was personally liable for KT's unpaid TPTs.

¶5          In 2019, ADOR sued KT, Kievit, Tunkey, and the individual parties' spouses to recover unpaid TPTs.   *See* A.R.S. § 42-1114(A) (authorizing ADOR to file suit to recover the amount of any taxes "owed by the taxpayer to the department that are due and unpaid").   The tax court entered default judgments against KT and the Kievits.   Only ADOR's suit against Tunkey and his wife (collectively, "Tunkey") is before us.

¶6          ADOR sought the $26,000 in unpaid TPTs from Tunkey pursuant to § 42-5028.   That statute imposes liability on a "person" for failing to remit to ADOR "any additional charge made to cover the tax." § 42-5028.   In *Action Marine*, this Court interpreted "additional charge" as meaning the entire amount collected from a business's customers to cover the TPTs.   218 Ariz. at 145 ¶ 23.   We also concluded that a "person" may include a taxpayer's corporate officers, directors, and other responsible persons having a duty to remit that money to ADOR.   *Id.* at 146–47 ¶¶ 28–29.

¶7          Eventually, ADOR and Tunkey filed cross-motions for summary judgment.   Tunkey argued (1) ADOR failed to assess the unpaid TPTs against him personally within the four-year limitation period provided by § 42-1104(A), making ADOR's suit untimely; and (2) ADOR failed to establish that Tunkey was in fact a "responsible person" under § 42-5028.   ADOR asserted (1) it was not required to separately assess the TPTs against Tunkey, so § 42-1104 was inapplicable, and the ten-year limitation period provided by § 42-1114(C) applied, making ADOR's suit timely; and (2) Tunkey was a "responsible person" under § 42-5028.

¶8          The tax court denied Tunkey's motion, granted ADOR's motion, and entered judgment against Tunkey for the $26,000 in unpaid TPTs.   The court of appeals affirmed.   *State ex rel. Ariz. Dep't of Revenue v. Tunkey*, No. 1 CA-TX 21-0006, 2022 WL 1146398, at *1 ¶ 1 (Ariz. App. Apr.

3

19, 2022) (mem. decision). We accepted review of Tunkey's petition because it presents an issue of recurring statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

### I.

**¶9**      We are asked to decide a single issue. Tunkey does not ask us to revisit *Action Marine*'s interpretation of § 42-5028, dispute he is a "responsible person" under that provision, nor contest the $26,000 calculation. Instead, he challenges only the tax court's ruling that ADOR was not required to timely assess the $26,000 amount against him personally before filing suit. We review de novo the court's ruling "and its interpretation of Arizona's tax statutes." *See SolarCity Corp. v. Ariz. Dep't of Revenue*, 243 Ariz. 477, 480 ¶ 8 (2018).

### II.

### A.

**¶10**      Section 42-1104(A) provides, in relevant part, as follows:

> For the taxes to which this article applies, every notice of every **additional tax due** shall be prepared on forms prescribed by the department and mailed within four years after the report or return is required to be filed or within four years after the report or return is filed, whichever period expires later.

(Emphasis added.)

**¶11**      Tunkey argues that responsible-person liability under § 42-5028 is separate from taxpayer-business liability, and therefore the unpaid TPT charges sought from him constitute an "additional tax due" that triggered § 42-1104(A)'s notice requirement. Because § 42-1114(A) authorizes ADOR to collect only taxes "due and unpaid," and ADOR failed to notify Tunkey of a tax assessment within the four-year limitation period, he contends the TPT charges were never "due" from him, and the tax court therefore erred by entering judgment for ADOR.

¶12      We reject Tunkey's argument for two reasons. First, § 42-1104(A) is inapplicable because ADOR seeks only to collect the amount self-assessed by KT. That statute concerns only an "additional tax due," which plainly refers to unreported or underreported taxes. *See* § 42-1104(A). Specifically, the statute presupposes the taxpayer failed to report liability for these taxes in a "report or return." *See id.* Indeed, in prescribing exceptions to § 42-1104(A), subsection (B) refers to the required notice as a "deficiency assessment." § 42-1104(B). And the audit and deficiency calculation procedures culminating in the deficiency assessment notice apply only to unreported or underreported tax liability. A.R.S. § 42-1108(A) (authorizing ADOR to conduct audits within § 42-1104's time periods if a taxpayer fails to file a return or ADOR is not satisfied with the return or payment amount "to determine the correct amount of tax"). Here, KT self-assessed the amounts owed for TPT charges in a return, making that amount immediately due. *See* Ariz. Dep't of Revenue General Tax Ruling 04-1 at 2 (2004) ("GTR 04-1") (stating taxes become due on the date a tax return establishes liability). ADOR accepted KT's assessment and sued only to collect those amounts. Consequently, § 42-1104(A) did not require ADOR to notify KT or Tunkey of "additional taxes due" because none existed.

¶13      Second, because the "additional charge[s]" Tunkey owes under § 42-5028 are the same as those self-assessed by KT, they do not constitute an unreported "additional tax due" under § 42-1104(A). Section 42-5028 itself states that the "additional charge" is one "made to cover the [TPT]." *See Action Marine*, 218 Ariz. at 145 ¶ 23. Similarly, § 42-5002(A)(1) requires a business that "imposes an added charge to cover the [TPT]" to remit the collected charges to ADOR. Rather than establishing that the unpaid "additional charge" is an "additional tax due" under § 42-1104(A), as Tunkey argues, § 42-5028 simply imposes concurrent liability on Tunkey for the money collected from KT's customers to cover the TPTs.

**B.**

¶14      Tunkey relies on *Action Marine*'s characterization of liability under § 42-5028 as "non-derivative" of taxpayer-business liability to support the contention that the charges owed by KT and Tunkey are different. *See* 218 Ariz. at 146–47 ¶ 28. But the Court made this characterization to explain why a responsible person under § 42-5028 is

liable only for an unremitted "additional charge" and not interest, costs, or penalties, which are not mentioned in that provision, as would be the case for liability based on a derivative, alter ego theory. *Id.*; *see also Specialty Cos. Grp., LLC v. Meritage Homes of Ariz., Inc.*, 251 Ariz. 365, 366 ¶ 1 (2021) (characterizing alter ego claims as "derivative in nature"). Viewed in this context, the Court did not use "non-derivative" as meaning that an "additional charge" under § 42-5028 is something other than the amounts charged to a taxpayer-business's customers to cover TPTs and consequently owed by that taxpayer. *See* § 42-5002(A)(1). Indeed, partial remittance of these charges by the taxpayer-business would reduce the amount owed by responsible persons under § 42-5028. The charges owed to ADOR by Tunkey and KT, excepting penalties, costs, and interest, are identical.

## C.

**¶15** Relatedly, we reject Tunkey's chicken-and-egg assertion that § 42-1114(A) does not authorize collection of TPT charges "due and unpaid" here because ADOR failed to establish through a pre-lawsuit assessment that Tunkey owed this money. The TPT charges were "due and unpaid" under § 42-1114(A) because KT self-assessed the collected charges but did not remit that money to ADOR, *see* GTR 04-1 at 2, and § 42-5028 imposed liability for that money on Tunkey as a responsible person. The lawsuit itself served as the mechanism for establishing Tunkey's liability; there is no statutory requirement to assess TPT charges against Tunkey to establish liability under § 42-5028. And although, as Tunkey contends, the lack of assessment meant he could not file an administrative appeal, he does not assert that this circumstance prejudiced his rights. *See* A.R.S. § 42-1251(A) (authorizing administrative appeals after notice of assessment).

## D.

**¶16** Our interpretation of the interplay between § 42-1104(A) and § 42-5028 is not inconsistent with Arizona's business law, as Tunkey argues. *See* A.R.S. § 29-3304(A) (providing that members of a limited liability company are not personally liable for the company's debts or liability). Liability imposed by § 42-5028 results from a person's failure to fulfill a duty to remit TPT charges collected from a taxpayer-business's customers and not from a person's role as managing member of a limited liability company. *See Action Marine*, 218 Ariz. at 147 ¶ 29. Indeed, a person without an ownership interest in the company can be liable under

6

§ 42-5028. *See id.* at 146–47 ¶¶ 28–29 (concluding "person" may include corporate officers, directors, or other responsible persons).

### E.

**¶17** Tunkey argues we should be guided by the court of appeals' decision in *Video Stop, Inc. v. Arizona Department of Economic Security*, 189 Ariz. 1 (App. 1996), which concerned successor-employer liability for unpaid unemployment taxes. *See* A.R.S. § 23-733(D) (imposing successor liability). There, the court held that A.R.S. § 23-743(A) requires the Arizona Department of Economic Security to "determine" within a three-year period any delinquency amount and issue "a collection notice and a statement of unpaid predecessor taxes" before the department can sue to collect those taxes from a successor-employer. *Video Stop*, 189 Ariz. at 4. Because the department did not provide that notice to the successor-employer there, the department was time-barred from pursuing its collection action. *Id.*

**¶18** *Video Stop* does not support interpreting § 42-1104 as requiring ADOR to notify Tunkey of the "additional tax due." First, that provision, unlike § 23-743(A), does not require ADOR to "determine" uncontested, self-assessed tax liability. *See* Part II(A). Second, *Video Stop* did not state that § 23-743(A) requires separate notice to a successor-employer if the predecessor was notified, making that case even less analogous to the one here. The department in *Video Stop* failed to give notice to anyone within the three-year limitation period. *Video Stop*, 189 Ariz. at 2. Presumably, if the predecessor-employer had been timely notified of the amount due, *Video Stop* would have permitted the department's suit. *Cf.* § 23-733(E) (obligating the department to fulfill the successor-employer's request to specify the amount due from the predecessor-employer at the time of acquisition).

### F.

**¶19** The non-Arizona cases Tunkey cites do not persuade us to reach a different conclusion. The relevant statutes in those cases either differ significantly from § 42-1104(A) by specifically requiring assessments against responsible persons, *see Ceccarelli v. Levin*, 938 N.E.2d 342, 344 ¶ 8 (Ohio 2010), or the courts interpreted their provisions in a manner not supported by our statute's wording, *see Jones v. United States*, 60 F.3d 584, 589 (9th Cir. 1995); *Bonedaddy's of Lee Branch, LLC v. City of Birmingham*,

192 So. 3d 1151, 1160–61 (Ala. 2015); *Garland v. Dir. of Revenue*, 961 S.W.2d 824, 828–29 (Mo. 1998); *Basch v. N.Y. State Tax Comm'n*, 134 A.D.2d 786, 788 (N.Y. App. Div. 1987).

**G.**

**¶20**      Finally, although we are sympathetic to Tunkey's assertion that permitting ADOR to sue under § 42-1114(A) to establish a responsible person's liability under § 42-5028 could be unfair if evidence pertaining to liability has been lost before expiration of the ten-year limitation period for these claims, we are not persuaded to change our interpretation of § 42-1104(A).   This is a policy argument for the legislature to address in deciding whether responsible persons should be separately assessed within a specified timeframe before imposing liability on them under § 42-5028. Regardless, we note that absent evidence of responsible-person liability, ADOR likely would be unable to prevail under § 42-5028.   *See* A.R.S. § 42-1255 (placing burden of proof on ADOR).   And notably, Tunkey does not assert that evidence here was lost.

**CONCLUSION**

**¶21**      We affirm the court of appeals' decision and the tax court's judgment.   Because Tunkey is not the prevailing party, we deny his request for attorney fees under A.R.S. § 12-348.

JUSTICE BOLICK, joined by JUSTICES BEENE, MONTGOMERY, and KING, concurring.

¶22 We join entirely the Court's opinion resolving the narrow issue presented to us. We write separately to urge that, when appropriate in a future case and consistent with stare decisis principles, we should entertain reconsideration of *Arizona Department of Revenue v. Action Marine*, 218 Ariz. 141 (2008), the jurisprudential lodestar in this area of law that potentially exposes TPT liability to persons who are not placed on clear statutory notice that they may be personally responsible for it.

**A.**

¶23 *Action Marine*'s troubling holding owes, at least in part, to the conceptual inconsistency in the way our Court approaches statutory interpretation. In *Action Marine*, the Court stated that "[o]ur primary goal" in statutory interpretation "is to 'discern and give effect to legislative intent,'" 218 Ariz. at 143 ¶ 10 (citation omitted), a formulation we have repeated in many subsequent cases. *See, e.g.*, *Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 195 ¶ 9 (2016); *State v. Jurden*, 239 Ariz. 526, 530 ¶ 15 (2016); *Rasor v. Northwest Hosp., LLC*, 243 Ariz. 160, 164 ¶ 20 (2017). In other cases, by contrast, we have stated that "[s]tatutory interpretation requires us to determine the meaning of the words the legislature chose to use," *S. Ariz. Home Builders Ass'n v. Town of Marana*, 522 P.3d 671, 676 ¶ 31 (Ariz. 2023), according to their original public meaning and broader statutory context. *Matthews v. Indus. Comm'n*, 520 P.3d 168, 174 ¶ 29 (Ariz. 2022). We will refer to the first formulation of statutory interpretation as "legislative intent" and the second as "plain meaning."

¶24 These two methodologies sound superficially similar and in most cases lead to identical and proper outcomes. But the majority and dissenting opinions in *Action Marine* illustrate that the divergent approaches can produce different outcomes and underscore why we should cogently and consistently apply a plain meaning approach to statutory interpretation going forward.

**¶25** The legislative intent approach views the words of a statute as a means of determining what the legislature intended.[1] Indeed, in some cases we have remarked that the "statute's text is the best evidence of that intent . . . ." *Jenkins v. Hale*, 218 Ariz. 561, 563 ¶ 10 (2008); *accord SolarCity Corp. v. Ariz. Dep't of Revenue*, 243 Ariz. 477, 480 ¶ 8 (2018) ("The best indicator of that intent is the statute's plain language . . . .").

**¶26** With due respect to opinions that employed or cited such language, the words of a statute are not "evidence" of anything. They are the law. Our oath as judges does not send us on a cosmic search for legislative intent. It requires us to "support the . . . Constitution and laws of the State of Arizona." A.R.S. § 38-231(E); *accord* Ariz. Const. art. 6, § 26.

**¶27** Legislative intent is at best amorphous and at worst illusory. In most cases, the words of a statute are the only thing to which the legislature agreed. Legislators may have multiple intentions in enacting particular words, and often those words are changed by later legislatures. The quest is inherently subjective and therefore corrosive of the rule of law, for it licenses judges to credit not what the legislature said through the words it enacted but what it meant to say. It also invites imprecision in legislative drafting if we appear to be at the ready to rescue a poorly drafted statute with a sharpened blue pencil. If the legislature agrees on findings, purposes, or definitions, it becomes our duty to ascertain statutory meaning through those prisms. *See, e.g.*, *S. Ariz. Home Builders Ass'n*, 522 P.3d at 676 ¶ 31 (applying a narrow construction as commanded by statutory language). And as a *secondary* interpretative device, legislative history can often help illuminate statutory meaning. *See, e.g.*, *Rasor*, 243 Ariz. at 164 ¶ 20 ("Where the meaning is unclear from language and context, we may employ secondary tools, such as considering legislative history . . . ."). But legislative intent properly understood is only a means to discern statutory meaning and never an object in itself. *See, e.g.*, *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring) ("We are governed by laws, not by the intentions of legislators."). We exceed our limited

---

[1] To be sure, we have sometimes book-ended that approach by admonishing that "'[w]hen the plain text of a statute is clear and unambiguous,' it controls unless an absurdity or constitutional violation would result." *Cox v. Ponce*, 251 Ariz. 302, 307 ¶ 18 (2021). But we do not always note that caveat, and the Court did not do so in *Action Marine*.

constitutional authority when we displace plain meaning with legislative intent.

**¶28** The evolution in Arizona jurisprudence of the legislative intent approach to statutory interpretation is curious. Our territorial Court emphatically rejected it, recognizing that "it is the duty of all courts to confine themselves to the words of the Legislature—nothing adding thereto; nothing demitting." *Flowing Wells Co. v. Culin*, 11 Ariz. 425, 429 (1908). "The court has no authority to extend a law beyond the fair and reasonable meaning of its terms, because of some supposed policy of the law, or because the Legislature did not use proper words to express its meaning." *Id.*

**¶29** A decade later, the Court observed that legislative intent, as expressly declared by the legislature, "should be the key to the door of what follows." *Deyo v. Ariz. Grading & Constr. Co.*, 18 Ariz. 149, 153 (1916). It explained that "[a]ny unhappy or careless use of words . . . should not be construed so as to defeat the *avowed intention* of the law-making body." *Id.* (emphasis added).

**¶30** Citing *Deyo* but extending the rule far beyond its reach, the Court expressly repudiated a plain meaning approach to statutory interpretation in *State v. McEuen*, 42 Ariz. 385, 392–93 (1933). In its place, the Court adopted two rules of statutory interpretation. "The first and most important principle . . . is that the intent of the legislature is to be ascertained and followed." *Id.* at 392. "The second . . . is that statutes shall be liberally construed to effect their objects and to promote justice." *Id.* (citing Ariz. Rev. Code § 3038 (1928)). *But see S. Ariz. Home Builders Ass'n*, 522 P.3d at 676 ¶ 31 (rejecting this approach). "These principles of interpretation take precedence over all others," the Court instructed, "the remaining rules being merely ancillary and used to assist in the proper application of the two above set forth." *McEuen*, 42 Ariz. at 392.

**¶31** This open-ended expression of legislative interpretation invites judicial mischief. The standard is subjective and skews toward a broad interpretation of the statute at interest to "promote justice" regardless of the statute's objective. The temptation to correct perceived legislative error or expand statutes beyond their plain meaning can lead the Court to transgress legislative power.

¶**32** We have surely retreated from the expansive interpretative role assumed for the Court in *McEuen*. *See, e.g.*, *Roberts v. State*, 253 Ariz. 259, 266 ¶ 20 (2022) (holding that "courts will not read into a statute something which is not within the manifest intention of the legislature as gathered from the statute itself," and "will not inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions" (*quoting City of Phoenix v. Donofrio*, 99 Ariz. 130, 133 (1965))). But other decisions, exemplified by *Action Marine*, suggest we have not yet fully returned to the wellspring of our proper role enunciated in *Flowing Wells*. Instead, we have struck an amorphous middle ground that is consistent in its inconsistency. We owe it to the parties and advocates who come before us to tell them what we are looking for when interpreting a statute, and we should hew to our constitutional boundaries by choosing plain meaning over legislative intent when the two diverge.

**B.**

¶**33** By contrast, the entirety of the majority opinion in *Action Marine* illustrates a search for legislative intent. *See* 218 Ariz. at 143–46, ¶¶ 12, 13, 16, 18, 25, 27 (depicting what the legislature "meant" or "intended"). The Court looked in part to what it considered an analogous provision[2] and to interpretation of similar statutes from different states. *Id.* at 144–45 ¶ 18. The majority concluded that notwithstanding its failure

---

[2] That provision, pertaining to income taxes, provides that "[a]ny person required to collect, truthfully account for and pay over any [withheld] tax imposed by this title who fails to do so is, in addition to other penalties provided by law, personally liable for the total amount of the tax not collected or accounted for and paid over." A.R.S. § 43-435. The *Action Marine* majority reasoned that the inclusion of this provision in the same bill suggested that the legislature similarly intended a broader meaning of "person" in § 42-5028. 218 Ariz. at 144 ¶ 15. To the contrary, we have consistently viewed different language in different constitutional and statutory provisions to have different meanings. *See, e.g.*, *Burns v. Ariz. Pub. Serv. Co.*, 254 Ariz. 24, 31 ¶ 28 (2022); *Rochlin v. State*, 112 Ariz. 171, 176 (1975); *see generally* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) ("[A] material variation in terms suggests a variation in meaning."). That would seem especially true where a different scope of a term is used in different provisions in the same bill.

to include corporate officers within the definition of "persons," "by enacting § 42-5028, the legislature meant to bring Arizona within the national trend of imposing personal liability on those individuals who fail to remit such taxes." *Id.* Thus, personal liability could extend to an "accountant, corporate officer, or other person charged with remitting the added charge to the taxing authority." *Id.* at 146 ¶ 26. Drawing upon practice from other jurisdictions, the Court remanded to the trial court to determine whether the person had a duty to remit the taxes—that is, "control over, responsibility for, or supervision of the money collected." *Id.* at 147 ¶ 29.

**¶34** The dissenting justices observed that while the majority opinion "has much to commend it as a matter of public policy," its conclusion "is not inexorably compelled by the text of the relevant statutes." *Id.* at 147 ¶¶ 32–33 (Hurwitz, J., dissenting). The dissenters noted that A.R.S. § 42-5002(A)(1) encompasses a "person who imposes an added charge," which "can only be the business that imposes the [TPT] charge," so that for purposes of liability, "'person' . . . can refer only to the putative taxpayer—whether a corporation, individual, or other entity." *Id.* at 148 ¶ 35. The dissent concluded that "before we in effect pierce the corporate veil and impose substantial liability on these individuals in the name of good public policy, I would require that the legislature more clearly enunciate its direction that we do so." *Id.* at 149 ¶ 40.[3]

**¶35** It is axiomatic that we must interpret statutes, whenever possible, to avoid an unconstitutional result. *State v. Arevalo*, 249 Ariz. 370, 373 ¶ 9 (2020) (stating the presumptions and construction as to constitutionality). Due process requires that statutes "provide clear notice of obligations so that taxpayers may comply and order their affairs accordingly." *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 22 ¶ 25 (2018). For precisely this reason, we construe ambiguous tax statutes in favor of the taxpayer. *See, e.g.*, *City of Phx. v. Orbitz WorldWide Inc.*, 247 Ariz. 234, 241 ¶ 22 (2019); *Vangilder v. Ariz. Dep't of Revenue*, 252 Ariz. 481, 488 ¶ 26 (2022). The corporate officer in *Action Marine* was not placed

---

[3] In addition, there may be cases where parties may be even further removed than the corporate officer in *Action Marine*, such as where the entity is a limited liability company. *See* A.R.S. § 29-3304(A) (insulating limited liability company members or managers from the company's debts and obligations).

on notice of potential liability by the plain meaning of § 42-5028 but was exposed to such liability only by stitching together disparate statutes and interpretations of different provisions from other jurisdictions.

**¶36**     It is premature to reconsider *Action Marine* as the issue was not briefed.   Should we do so in the future we must take into account applicable stare decisis principles.   *See, e.g.*, *Lowing v. Allstate Ins. Co.*, 176 Ariz. 101, 107 (1993) (describing stare decisis as "a doctrine of persuasion" that honors prior decisions unless, in addition to other considerations, they are "clearly erroneous or manifestly wrong"). Nor did the Tunkeys dispute their personal liability for taxes owed pursuant to *Action Marine*, contesting only the process employed by ADOR to collect back taxes.   Because the Court has correctly ruled on that question, any potential reconsideration of *Action Marine* must await a future case.